Coicock, J.
In reviewing the decree of the Chancellor, in this case, it will not be necessary to make any previous statement of the facts, as they are sufficiently stated in the decree, and brief; and I will refer only to such of them as may be necessary in the argument.
The case depends, in a great measure, on the construction of the act of 1785, requiring marriage settlements to be recorded within three months of the time of their execution; and I shall, therefore, in the first place, state the views of the Court on that point. On the one hand, it is contended, that the act embraces only such deeds, as are founded on the consideration of marriage, that is, either made before marriage, but in contemplation of it, or after marriage, in consequence of articles entered into, or a bond given to make the settlement, before the marriage. On the other hand, it is said, that the act embraces all settlements, whether made on the marriage, as a direct consideration, or at any subsequent period of time, by a husband on his wife, either of her property, possessed before, or after marriage, or of his property, or a part, or the whole, of both. And I am free to confess, that I have had great difficulty in coming to a conclusion on the subject, and that I have considered it as one of the first importance to the community.
On the marriage of a woman, her property becomes her husband’s ; but the law does allow a separate interest to be created. Inasmuch, however, as even in such cases the property usually remains in the possession of the husband, and, of course, under his control, it is impossible that the community can distinguish between that which belongs to the husband, and that which is the separate' property of the wife, unless there be some public place of record, in which the deed which creates such interest should be found. To effect this purpose, then, was, certainly, the great object of the Legislature, in passing the recording acts. The term used seems to have been intended as a general one, and is comprehensive enough to embrace both kinds of settlements : but, although I have not been able to find any thing in any of the books, like a definition of a marriage settlement,! think it must be admitted, that they do seem to favor the distinction which is contended for by by the complainant’s counsel. Mr. Atherly, in treating on the subject of settlements, does speak of some made after marriage, as “ marriage settlements;” but it is only of those which have been so made in consequence of articles previously entered into : and when he pursues the subject, and comes to speak of other settlements made after marriage, he uses the terms ’post-nuptial settlement, as if in contradistinction to marriage settlements, eo nomine.
We must, then, look to the mischief which the Legislature intended to guard against, and see if it does not, or may not, exist, as well in regard to the one kind of marriage settlements, as to the other, pursuing the distinction made in the argument; and, I think, but little observation is necessary, to shew, that it is as important to *264 {jlc interests oflhe community, that settlements made after marriage, although arising out of the connexion, should be recorded, as those made before, and in which it may be said that marriage is the direct consideration. All property which comes to the husband during the coverture, from whatever source, or at whatever time, may be considered as much the property of the husband, as that which he acquires with hia wife, on his marriage ; and if this could be secretly conveyed to her use, a deception might be as well practised, as it may be by a secret conveyance of that, which she may have possessed before marriage. But it is replied, that the rights of creditors were already sufficiently protected by the statute of Elizabeth, and the common law in such cases, and, therefore, it was not intended, that the act should embrace them: for if a man, who is in debt, settles his property on his wife, it may be avoided; and if he be not in debt, no injury is done. This is, certainly, a strong view of the subject, and would be conclusive, if it covered the whole ground. But it is obvious, that a settlement, such as those we are now considering, may be made of a wife’s equity, which the creditors could not touch : but if the deed be not recorded, a further indulgence, or even a further credit, might be given on the faith of the property; and so, too, in the case of a man who is not at all in debt at the time of making the settlement. He might obtain a credit on the faith of the property seen in his possession, which might be prejudicial to the rights of others : and, indeed, it has been questioned, whether, under any circumstances, such settlements were not injurious to the interests, not only of the community, but of the parties themselves, by encouraging indolence, and luxury, in the husband, and exciting expectations, or hopes, in the creditors, which are, for the most part, disappointed. Upon the whole, I am satisfied, that post-nuptial settlements are within the mischief, which the Legislature intended to guard against, by the recording act, and, therefore, to be considered as embraced within its provisions.
This construction of the act would put an end to the claims of the complainants, but for some peculiar circumstances, which have been relied on by her counsel. In their very elaborate argument, anticipating the possibibility of such a construction as we have given to the act, it was contended, as to the first deed of the 5th March, 1794, that if the deed is void, the parties are to be considered as standing in their original rights; and that the twenty-five slaves mentioned in the deed, and purchased with the money left by her grandfather, must be considered as held by the executor, her grand uncle, in trust for her. But this is at war, both with the facts of the case, and with the law arising out of them. They were not held in trust for her, and were delivered to the husband, under the impression that the deed would secure them to her. Once they were reduced into possession, they were absolutely the property of the husband, and, as to them, therefore, we concur with the Chancellor, that they must go to the creditors.
The same argument was also urged as to the property left to the r^nlainant by the will of her father. That, it is clear, was given *265 to trustees for her use ; but by the decision of a competent tribunal, it was decided, that she took an absolute estate in the personal property, which vested in the husband, who by the decree of that Court, was ordered to make a settlement. I say, was ordered to do so ; for this is putting it in the strongest light, for the complainant : and even then I think the deed must be recorded. The Chancellor, however, says, that the Court had no right to interfere with the will of the father, as the property was settled on her by that will, by being placed in the hands of trustees, to be held for her benefit. I have before said, that this was the decision of a competent tribunal, and therefore we could not now disturb it; but if it were still open for consideration, we should give the same construction to the will. And I cannot doubt, that although the Court may have refused to interfere; yet as all the parties were before them, and the trustees consenting, and relinquishing their trust, the Court had the power to order the settlement.
But on this point it was urged by the complainant’s solicitors, that as to the deeds made by order of the Court of Equity, it is not necessary that they should be recorded, for the decree of the Court, was notice to all the world : and the same view of the subject is taken by the Chancellor in his decree. No direct authority has been produced to support this position, and the cases to which we have been referred, only shew, that the decrees of the Court of Equity, are considered, in the distribution of assets, as equal to judgments at law. They go no further. The case of Brown v. Thompson, from 4 Johns. C. R. 634,is to this point; and so is the great case, as it is called, of Morrice v. The Bank of England, Cas. Temp. Talb. 217: but they establish no more. In the last mentioned case, in a contest between creditors who had obtained judgments at law, and others who had decrees in Chancery, Sir Joseph Jekyll, the Master of the Rolls, directed that the decree creditors, being prior in time, should be first paid : and this is the extent of that case. The case of Coit v. Owen, 2 Desaus. 456, determines nothing more, than that a decree, formerly made, cannot be revised by a subsequent decision ; and it lets in some creditors to be paid out of a fund subject to their debts. The case of Woddrop n. Price, 3 Desaus. 203, decides no other matter, than that the decrees of the Court of Equity, are put on the same footing as judgments'at law.
But if the power of the Court of Equity, when acting directly on the property, be admitted in the fullest extent, it cannot apply to this case: nor could this decree, by any possibility, operate, practically, as a notice. For the Court did not act on the property, except through the husband. They ordered him, to make a settlement of a certain portion of the property. Now, suppose one should go to the records of the Court, to obtain information. He would find an order by the Court, that Mr. Price should settle so many negroes, and so much land, on his wife; but that would not enable him to determine what negroes, or what land, was settled. He would still have to go further, and would naturally be led to the recording offices.
*266 /I am not aware of any case, decided either in the Court of Equity, or in a Court of Law, in this State, where any thing, short of direct notice, has been considered as equivalent to recording ; and I am one of those who think, that the Courts went too far, even in admitting that; for my experience has satisfied me, that it leads to perjury, besides being a departure from the positive requisitions of a legislative act: which, it must be admitted, is at all times dan. gerous, and invariably produces litigation. Wherever a settlement is ordered by a Court of Equity, I think it should make a part of \the order, that the deed be immediately recorded ; for it certainly is an interference intended for the benefit of the wife, and, therefore, should be completed by the officers of the Court.
The Court, however, concurs with the Chancellor, on the last ground, on which he rests the complainants’ right to the slaves, intended to be conveyed by the deed of 1812, and contained in the schedule annexed to that deed. As they passed directly into the hands of the trustee, with the consent of the husband, and before he had reduced them to possession; and remained in his possession, for upwards of five years; and this was known to the principal creditor, who was the factor for both husband and wife; such possession must be considered adverse to the claims of both husband and creditors, and consequently vests the property in her. No one could be defrauded by this arrangement, for no credit could have been given on the faith of this property. The decree is therefore affirmed in this particular, but must be, in other respects, so reformed, as to accord with the views, which are herein expressed, of the rights of the respective parties. And as the counsel for the defendants have abandoned all claim to the real estate, it is only necessary to say, that the decree of the Chancellor, as to that, is also affirmed.
As some of the conveyances disposed of the estate, and inheritance, of the wife, particularly the deed of the 4th May, 1813, whereby she conveyed her lands to a trustee, for the purpose of conveying them to her husband, Thomas W. Price, it is proper that all such deeds made by her should be cancelled, that they may not embarrass her title at law. It is, therefore, by the consent of all parties, ordered, and decreed, that all such deeds, and especially the deed of the 4th May, 1813, be cancelled.
After the delivery of this opinion, it was contended, that the claim to the Toogadoo plantation must be excepted, as standing on different grounds from that to the other lands; and the counsel on both sides have submitted their arguments in writing. These have been duly considered, and the Court are unanimously of opinion, from a review of the origin, and all the circumstances relative to the Toogadoo plantation, that it is the rightful inheritance of the complain, ant, Charlotte Price, and that, consequently, she is intitled to the immediate possession.
Johnson, J. concurred.
Nott, J.
I concur in the opinion which has been delivered in this case, in relation to'the deeds of 1794, and 1796. I consider these as marriage settlements, or contracts, within the meaning of the act of 1785, and therefore void, for the want of recording. I *267 differ in opinion with regard to the deed of separation. I think that directly the reverse of a marriage settlement; and that it did not, therefore, come within the provisions of that act. Besides, the wife had the separate, and exclusive possession, and enjoyment of the property, of which Mr. White had notice, as he was her factor. The children may be considered as standing in a different situation. The property given to them, continued in the possession of the father. He continued to receive the rents, and profits of the land, and the services of the slaves ; and to use and enjoy the property, and to exercise every act of ownership over it, as if he had the sole, and exclusive right. It might, (therefore, very well be considered as fraudulent against creditors.
With regard to the Toogadoo plantation, it cannot, in any point of view, be considered as a marriage settlement. It was an actual purchase, or exchange, by the trustees, for the use of the wife. It was not necessary, therefore, that it should have been recorded in the office of the Secretary of State. It was sufficient that it was recorded in the office of the Register of Mesne Conveyances, where all deeds of that sort are required to be recorded.
I do not think that we have any thing to do with any other deeds, and particularly where other persons are concerned. I am opposed, therefore, to interfering with them by cancelling, or in any other manner. I am also further of opinion, that it does not belong to this Court to determine in what order the debts shall be paid. There is no such question involved in the case; and it was one, therefore, on which we ought not to express any opinion.

Decree modified.